UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

1800HOTELS4U, LLC,  
   d/b/a 1800Hotels.com,

Case No. 8:10-bk-16648-CED  
Chapter 7 case

       Debtor.         /

In re:

HAPPY DUCK LIMITED  
   d/b/a 1800Hotels.com,

Case No. 8:10-bk-16655-CED  
Chapter 7 Case

       Debtor.         /

## CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES SUBJECT TO HIGHER OR BETTER OFFERS; (B) ESTABLISHING AND APPROVING BIDDING PROCEDURES; (C) APPROVING NOTICE OF SALE; (D) SCHEDULING AUCTION; AND (E) SCHEDULING HEARING TO APPROVE SALE (EXPEDITED HEARING REQUESTED)

Lauren P. Greene, the duly appointed Chapter 7 Trustee (the "Trustee") for 1800Hotels4U, LLC d/b/a 1800Hotels.com ("1800 Hotels") and for Happy Duck, Limited ("Happy Duck"), by and through her undersigned attorneys, files this motion requesting the Court to enter an Order that (a) authorizes the sale of certain personal property to Travel Leaders Group, LLC (the "Potential Purchaser") pursuant to the terms and conditions of that certain Letter of Intent dated October 25, 2010 (the "Agreement"), free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. § 363 and subject to higher and better bids; (b) establishes and approves bidding and auction procedures (the "Bid Procedures"); (c) approves the notice of sale pursuant to Bankruptcy Rules 2002, 6004, 6006, 9006(c); (d)

schedules an auction; and (e) schedules a hearing to confirm the sale.

The Trustee requests the Court consider this Motion on an expedited basis on or before **Wednesday, November 10, 2010**, and estimates that the amount of time required to consider this motion as well as other pleadings filed simultaneously herewith will be approximately 30 minutes. In support of the Motion, the Trustee states as follows:

### Requested Relief

The Trustee seeks to sell the assets of 1800 Hotels and Happy Duck to the Potential Purchaser for $220,000.00. This sale is subject to higher bids with an auction to be conduced on or before **Monday, November 29, 2010**, with a hearing to consider the highest bid immediately thereafter and a closing to occur on or before **Tuesday, November 30, 2010**. The assets of 1800 Hotels and Happy Duck are defined herein and generally include the domain names, trademarks, software licenses, programs associated therewith, and customer lists. The Trustee seeks relief on an expedited basis.

### Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue of the proceeding and Motion is proper in this District pursuant to 28 U.S.C. § 1409.

### Background

2. On July 13, 2010 (the "Petition Date"), 1800 Hotels filed for Chapter 11 relief initiating bankruptcy case number 8:10-bk-16648-CED. Happy Duck also filed for Chapter 11 relief initiating bankruptcy case number 8:10-bk-16655-CED. The cases were originally jointly administered.

3. On October 12, 2010, the Court entered two separate orders converting the cases to Chapter 7 cases. Lauren Greene was subsequently appointed the Chapter 7 trustee in both cases. The Court also dissolved its order previously granting joint administration.

4. Prepetition, 1800 Hotels and Happy Duck were engaged in the online travel business (1800Hotels.com and 1800Hotels.ie). They purchased hotel rooms in bulk from various suppliers and wholesalers and then sold hotel rooms to consumers (end users of their websites and call centers). Happy Duck is an Irish company whose operations expanded considerably into the United States in the year 2008. Happy Duck operated an online travel agency under the fictitious name "1800HOTELS" and through its wholly-owned subsidiary, 1800 Hotels.

5. The sale will include substantially all of the assets of 1800 Hotels and Happy Duck including: the domain names (1800Hotels.com and 1800Hotels.ie), computer systems, certain rights to software and IT infrastructure, disks, tapes, copyrights, trade secrets, exclusive rights to customer lists and customer data owned by 1800 Hotels and Happy Duck, and other documentation relating thereto and all licenses, contracts and other agreements in which the Potential Purchaser may deem necessary or appropriate to assume for its intended use of the domain names (collectively referred to as, the "Purchased Assets").

6. In addition to the Purchased Assets, 1800 Hotels and Happy Duck have certain miscellaneous personal property consisting of office furniture, potential preferential and fraudulent transfer actions all of which are not part of the sale of the Purchased Assets (collectively referred to as the "Excluded Assets").

7. Pre-conversion, 1800 Hotels and Happy Duck engaged the services of EP

USA, Inc. ("Equity Partners"), specifically, Ken Mann, to market and sell the Assets, as well as to broker joint venture or equity investors. As a result of the conversion of the case, the Trustee requested the continued services of Equity Partners to solely market and sell the Purchased Assets. Simultaneously with the filing of this Motion, the Trustee shall file a separate application seeking to employ Equity Partners to sell the Purchased Assets post-conversion.

8. Equity Partners entered into thirty-nine or more confidentiality agreements for the purpose of selling the Purchased Assets. As a result, the Trustee through Equity Partners, has been in negotiations with several parties and obtained three offers. The Trustee has identified the Potential Purchaser as currently being the best offer for the acquisition of the Purchased Assets.

**Proposed Sale of Assets**

9. On or about October 25, 2010, the Trustee entered into the Agreement with the Potential Purchaser, subject to Court approval and other terms and conditions, whereby the Trustee proposes to sell to Potential Purchaser the Purchased Assets. A copy of the Agreement is attached hereto as **Exhibit "A."** All defined terms shall have the same meaning as set forth in the Agreement. To the extent any inconsistencies or conflicts exist between the terms of the Agreement and this Motion, the terms of the Agreement shall control and shall govern the rights of the Parties and any party in interest or other person affected by this Motion or the Agreement.

10. The Agreement provides for the following terms:

    a) Purchase price of $220,000.00 to be paid to the Trustee (the

"Purchase Price"), with an initial deposit of Twenty Thousand and No/Dollars ($20,000.00) towards the Purchase Price (the "Deposit"). The Deposit is being held in escrow by Equity Partners. The Purchase Price shall be in cash, subject to the credit of the Deposit (referred to as the "Sale Proceeds").

b) subject to higher and better bids, pursuant to the bidding procedures for which approval is sought in this Motion;

c) free and clear of all liens, claims, encumbrances, and interests, with all such all liens, claims, encumbrances, and interests attaching to the Sale Proceeds;

d) a break-up fee of $10,000.00, as more fully described herein; and

e) completion of due diligence by November 12, 2010.[1]

11. The Agreement is the product of extensive good faith and arms length negotiations between the Trustee and the Potential Purchaser, each of whom is represented by counsel. The Trustee is not aware of any relationship between the Potential Purchaser and an insider of either 1800 Hotels or Happy Duck within the meaning of Section 101(31) of the Bankruptcy Code.

12. The Trustee is unaware of any claims, liens and encumbrances or interest in the Assets except as set forth herein:

---

[1] If the Potential Purchaser withdraws its offer, the Trustee has a backup potential purchaser for substantially the same terms and will be substituted as the Potential Purchaser.

(a) Blacknight Internet Solutions Limited ("Blacknight") claims an interest in the hosting of the domain names. Blacknight has agreed to release any claim in the Purchased Assets for payment of $7,000.00 for services through the end of November 2010, together with an order directing Blacknight to release the domain names to the Trustee. The Trustee has already made payment to Blacknight.

(b) Communicraft Limited ("Communicraft") claims an interest in the software pursuant to a licensing agreement and asserts that it is the owner of a certain portion of the component parts of the software that create the software programs used with the domain names. Communicraft has agreed to release any claim in the Purchased Assets for payment of $20,000.00 and a percentage of the Sale Proceeds, as set forth in paragraph 14. below.

13. The Trustee asserts that the Agreement and auction process sought to be approved will bring value to the bankruptcy estate and will maximize the proceeds from the Assets.

14. At the closing, the following expenses shall be paid from the Sale Proceeds:

(a) Marketing costs up to a cap of $18,000.00 to Equity Partners pursuant to the Agreement with Equity Partners;

(b) Percentage fee associated for the sale of the Purchased Assets pursuant to the Agreement with Equity Partners;

(c) $20,000.00 to Communicraft plus 20% of the Sale Proceeds above $225,000.00, if any.

15. The Agreement does not contemplate the sale of the Excluded Assets. The Excluded Assets shall remain property of the respective estates of 1800 Hotels and Happy Duck, subject to further administration and liquidation by the Trustee.

**Auction and Bid Procedures**

16. The Trustee has determined that the sale of the Purchased Assets at a public auction (the "Auction") should enable the Trustee to obtain the highest and best offer for the

Purchased Assets.

17. The Trustee proposes to conduct the Auction pursuant to the terms and conditions of the Bid Procedures which are attached hereto as **Exhibit "B."**

18. A condition to the Agreement is the entry of a final, non-appealable order approving the Bid Procedures and Sale. The Trustee requests approval of these Bid Procedures. Under Rule 6004(h), the Trustee requests that the sale order be considered immediately final and enforceable and not be stayed.

19. The Trustee requests that the Auction occur on **Monday, November 29, 2010, beginning at 9:30 a.m. EST** at the offices of Trenam Kemker, 101 E. Kennedy Boulevard, Suite 2700, Tampa, Florida 33602. The Trustee requests that the hearing to consider the sale and results of the Auction take place the afternoon of **Monday, November 29, 2010**, but in any event, no later than **Tuesday, November 30, 2010**, at a time set by the Court, at the U.S. Bankruptcy Court, 801 North Florida Avenue, Tampa, Florida, 33602 (the "Sale Hearing").

20. The Trustee requests, pursuant to Bankruptcy Rules 2002, 6004, 6006 and 9006(c) that the time for notice to parties of the Auction and Sale Hearing be reduced to the extent necessary given the dates set by the Court.

21. To participate in the Auction, the Trustee proposes that all interested persons comply with the Bid Procedures set forth in **Exhibit "B,"** including the requirement that the initial overbid be submitted in writing so as to be received by no later than **4:00 p.m., EST, Friday, November 26, 2010** ("Initial Overbid Deadline").

22. Any person/entity other than the Potential Purchaser (the "Overbidder") that is interested in purchasing the Proposed Assets must submit to the Trustee, counsel for the Trustee, and Equity Partners, a written "Initial Overbid" on or before the Initial Overbid Deadline. To be considered, the Initial Overbid must be in writing and must substantially comply with the terms of the Bid Procedures. The Overbidder that submits an untimely and/or non-conforming Initial Overbid may be disqualified from bidding at the Auction. Furthermore, the Trustee may, at her sole discretion, limit participation in the Auction to only those persons/entities which timely submit a conforming Initial Overbid.

23. Any Initial Overbid must be accompanied by a deposit of $20,000.00 in cash or certified check. The deposit shall be retained by Equity Partners and applied to the Purchase Price if the Overbidder is the prevailing bidder. If the Overbidder is not the prevailing bidder the deposit of the Overbidder will be returned.

24. The Initial Overbid must be $240,000.00, or $20,000 above the Purchase Price.

25. In the event one or more timely conforming Initial Overbids are submitted, the Trustee will conduct the Auction and each subsequent bid shall be in increments of at least $20,000.00, with the sole discretion of the Trustee to decrease the subsequent increments to $10,000.00.

26. At the conclusion of the Auction, the Trustee shall determine which bid represents the highest and best offer for the Purchased Assets and shall designate that entity as the "Prevailing Bidder."

27. At the conclusion of the Auction, the Trustee shall have the right (but not the obligation) to select a bidder other than the Prevailing Bidder and to designate such bidder as the "Back-up Bidder." If, for any reason, the Prevailing Bidder is unable or unwilling to timely perform its obligations under the Prevailing Bidder's definitive sale agreement, the Trustee may sell the Assets to the Back-up Bidder without further notice or hearing.

28. In the event the Trustee does not receive any timely, conforming Initial Overbids, the Trustee will notify the Court at or before the Sale Hearing and will request the Court to confirm the Sale to the Potential Purchaser pursuant to the Agreement.

29. The Trustee believes that the Bid Procedures provide a necessary and actual benefit to both 1800 Hotels' and Happy Duck's estates. The Bid Procedures establish the parameters under which the value of the Purchased Assets may be tested at a public auction. The terms and conditions of the Auction will enable the Trustee to realize the maximum value of the Purchased Assets, and thus ensure that the Auction is in the best interests of the estate and its creditors.

30. The Trustee proposes that the Court retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bid Procedures Order.

**Break up Fee**

31. As provided in the Agreement, the Potential Purchaser has required a break-up fee of $10,000.00 (the "Break-Up Fee"). Pursuant to the Agreement, the Break-Up Fee is only payable if the Potential Purchaser fails to acquire the Purchased Assets (i.e., is outbid at the Auction). The Break-Up Fee is accounted for by requiring a $20,000.00 minimum Initial Overbid.

32. The Potential Purchaser has expended, and likely will continue to expend, considerable time, money and energy pursuing the Sale and has engaged in extended arm's length and good faith negotiations. In recognition of this expenditure of time, energy and resources, and the benefits of, securing a stalking horse or opening bid, the Trustee has agreed to provide the bidding protections to the Potential Purchaser. Specifically, the bidding protections require, among other things, (i) Court approval of the Break-Up Fee; (ii) the Break-Up Fee will be payable by the Trustee to the Potential Purchaser subject to the terms of the Agreement, provided that the Potential Purchaser is outbid at the Auction (and is not the Prevailing Bidder at the Auction); (iii) the Break-Up Fee shall be paid from the Sale Proceeds; (iv) the Break-Up Fee shall become an administrative expense claim in this Chapter 7 Case if the Sale fails to close in any circumstances under which the Trustee does not become entitled to retain or obtain payment of the Prevailing Bidder's Deposit; and (v) setting the minimum Initial Overbid at the Auction of at least $20,000.00 and subsequent Overbids at $20,000.00.

33. The proposed Break-Up Fee is necessary and provides an actual benefit to the estates. Specifically, the Agreement provides that it is a condition to its obligations under the Agreement that the Bid Procedures, including, without limitation, payment of the Break-Up Fee, as proposed in this Motion, be approved by the Court. Unless the Bid Procedures proposed herein are approved, the Trustee is not confident that the Auction will generate superior offers. Moreover, the Trustee submits that the willingness of the Potential Purchaser to commit to purchase the Purchased Assets under the terms and conditions of the Agreement, subject to higher and better offers, may encourage third parties to submit higher

bids for the Purchased Assets. The Auction process is essential in this case in order to give the estates the opportunity to maximize value for the benefit of all of its constituencies.

## Assumption and Rejection of Executory Contracts

34. The Potential Purchaser is not assuming any leasehold contracts.

35. The Potential Purchaser, at its sole discretion may assume contracts necessary in order to facilitate the sale of the Proposed Assets, including without limitation the Affiliation Agreement executed between 1800 Hotels and IAN.com, LP dated July 28, 2010. Any such assumption and cure shall be the responsibility of the Potential Purchaser.

36. Pursuant to applicable law and to the extent necessary, any contracts not assumed by the Potential Purchaser shall be deemed rejected as of the date of the closing of the Purchased Assets.

37. This Motion shall be served upon all Scheduled G claimants of both 1800 Hotels and Happy Duck.

## Notice of the Auction, Bidding Procedures and Hearing to Confirm Sale

38. Attached to this Motion as **Exhibit "C"** is a proposed Notice of Auction and Notice of Sale Hearing ("Sale Notice").

39. The Sale Notice complies with Rule 6004 in that the Sale Notice:

(a) identifies the Assets being sold;

(b) the date and place of the hearing to confirm the Auction; and,

(c) the deadline for filing and serving Initial Overbids and Objections to the Sale.

40. Within twenty four (24) hours after the entry of the Order on this Motion, the Trustee shall serve, via first-class U.S. mail consistent with the Bankruptcy Rules 2002(a)(2) and 6004: (i) the Order on this Motion; (ii) the Bid Procedures; and (iii) the Sale Notice, in such form as the Court shall approve, on the following entities: (a) counsel for 1800 Hotels and Happy Duck; (b) all persons that were contacted by the Trustee or Equity Partners in connection with the marketing and sale process for the Purchased Assets; (c) all other prospective offerors and parties-in-interest upon written request to the Trustee or Equity Partners; (d) the State of Florida, Department of Revenue and the Internal Revenue Service; (e) all persons who claim to have a lien, interest, encumbrance or other interest in the Purchased Assets; (f) all Scheduled G claimants of 1800 Hotels and Happy Duck; and (g) all persons required pursuant to Bankruptcy Rules 6004(a), 6004(c), 6006(c) and 9014.

### Objection to Sale

41. The Trustee requests that any objections to the Sale of the Purchased Assets be filed with this Court no later than **4:00 p.m. EST on Friday, November 26, 2010** and at a minimum such objection be served upon the Trustee, counsel for the Trustee, counsel for 1800 Hotels and Happy Duck, counsel for the United States Trustee, and counsel for the Potential Purchaser.

**WHEREFORE**, the Trustee respectfully requests the entry of the Order:

a. Granting this Motion;

b. Authorizing the Sale of the Purchased Assets to the Potential Purchaser, subject to higher and better offers;

c. Authorizing the Trustee to conduct the Auction of the Purchased Assets and scheduling the Auction;

d. Approving the Bid Procedures described herein;

e. Approving the Break-Up Fee described herein;

f. Approving the form of the Notice of Sale and manner of service;

g. Scheduling an expedited hearing to approve the Bid Procedures, the Notice of Sale, and this Motion;

h. Authorizing and approving the rejection of executory contracts not specifically assumed by the Potential Purchaser; and

i. Granting such other relief as the Court deems appropriate.

Dated: November 8, 2010.

/s/ Lara Roeske Ferenandez
LARA ROESKE FERNANDEZ
Florida Bar No. 0088500
LRFernandez@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
 FRYE, O'NEILL & MULLIS, P.A.
Post Office Box 1102
Tampa, Florida 33601
Telephone: (813) 223-7474
Telefax: (813) 229-6553
Attorney for the Chapter 7 Trustee

5016153v2

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 8, 2010, a true and correct copy of the foregoing *Motion to Sell* was furnished by electronic mail both by a separate email as indicated below and the court's CM/ECF electronic noticing and/or by regular U.S. mail to the following parties:

| | | |
|---|---|---|
| **Travel Leaders**<br>c/o Robert S. Brill<br>Senior Vice President and<br>General Counsel<br>Travel Leaders Group, LLC<br>6442 City West Parkway<br>Minneapolis, MN 55344-3245<br>bbrill@travelleaders.com<br>Potential Purchaser | **Leonard H. Gilbert, Esq.**<br>**Keith Fendrick, Esq.**<br>Holland & Knight, LLP<br>100 N. Tampa Street<br>Suite 4100<br>Tampa, FL 33602<br>Keith.fendrick@hklaw.com<br>Counsel for Donvand Limited<br>d/b/a Gullivers Travel<br>Associates | **Steven M. Berman, Esq.**<br>Shumaker Loop & Kendrick<br>101 E. Kennedy Blvd.<br>Suite 2800<br>Tampa, FL 33602<br>sberman@slk-law.com<br>Counsel for 1800Hotels4U,<br>LLC and Happy Duck, Limited |
| **Robert Soriano, Esq.**<br>Greenberg Traurig<br>625 E. Twiggs Street<br>Suite 100<br>Tampa, FL 33602<br>sorianoR@gtlaw.com<br>Counsel for Tourico Holidays,<br>Inc. | **Tiffany A. DiIorio, Esq.**<br>Shutts & Bowen LLP<br>100 S. Ashley Drive<br>Suite 1500<br>Tampa, FL 33602<br>tdiiorio@shutts.com<br>Counsel for The Mark Travel<br>Corp. d/b/a Mark<br>International | **Lonnie L. Simpson, Esq.**<br>DLA Piper LLP<br>100 N. Tampa Street<br>Suite 2200<br>Tampa, FL 33602<br>Lonnie.simpson@dlapiper.com<br>Counsel for National<br>Westminster Bank Plc, Ulster<br>Bank Ireland Limited, Ulster<br>Bank Limited |
| **Dennis J. LeVine**<br>P.O. Box 707<br>Tama FL 33601<br>Theresa.byington@gmail.com<br>Counsel for Hotelbeds, SLU | **Mark J. Wolfson**<br>Foley & Lardner<br>PO Box 3391<br>Tampa FL 33601<br>mwolfson@foley.com<br>Counsel for YouTravel.com,<br>SA | **Frank F. McGinn**<br>ffm@bostonbusinesslaw.com<br>Bartlett Hackett Feinberg P.C.<br>155 Federal Street, 9th Floor<br>Boston, MA 02110Counsel for<br>Iron Mountain Information<br>Management, Inc. |
| **Theresa Boatner**<br>**U.S. Trustee**<br>Timberlake Annex<br>Suite 1200<br>Tampa, FL 33602 | **Blacknight Internet<br>Solutions Limited**<br>Attn: Paul Kelly<br>Barrowside Business Park<br>Carlow, Ireland<br>paul@blacknight.com | **Communicraft**<br>c/o Colm O'Riordan<br>Managing Director<br>100 Capel Street<br>Dublin 1, Ireland<br>colmor@communicraft.com |

| | | |
|---|---|---|
| **Mr. Ken Mann**<br>Equity Partners, Inc.<br>101 N. West Street<br>Easton, MD 21601<br>kmann@equitypartnersinc.com | **IAN.com, LP**<br>Service by email<br>jnelson@hotels.com | **ABC Capital Corp.**<br>1313 W. Gray Street<br>Tampa, FL 33606 |
| **GTA/Travelport**<br>c/o Eric Bock<br>405 Lexington Ave., 57th FL.<br>New York, NY 10174 | **Travco, LLP**<br>c/o George Marsellos<br>92-94 Paul Street<br>London, EC2A 4UX<br>United Kingdom | **Hotel Connect, Ltd.**<br>28 St. Albans Lane<br>London NW11 7QE<br>United Kingdom |
| **Hotel Beds**<br>c/o Maria Romero<br>Avda. Manuel Fraga<br>Iribarne 15<br>Malaga, Spain | **You Travel**<br>c/o Sofia Zournatzidi<br>76 Voriou Ipirou Street<br>Athens, Greece 15125 | **Parties-In-Interest** L.B.R. 1007-2 for both Debtor cases (matrices attached) Those parties reflected on this Certificate of Service have been removed as indicated on the matrices. |

/s/ Lara Roeske Ferenandez
LARA ROESKE FERNANDEZ
Florida Bar No. 0088500
LRFernandez@trenam.com