**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

1800HOTELS4U, LLC, d/b/a
 1800Hotels.com,

    Debtor.
_____/

Case No. 8:10-bk-16648-CED

Chapter 7

## NOTICE OF FILING
## ASSET PURCHASE AGREEMENT

PLEASE TAKE NOTICE that Lauren P. Greene, the Chapter 7 Trustee, provides notice of filing executed Asset Purchase Agreement by and between Travel Leaders Group, LLC ("Buyer"), Lauren Greene, the duly appointed Chapter 7 Trustee for 1800Hotels4U, LLC and Happy Duck Limited ("Seller).

Dated: November 30, 2010.

        */s/ Lara Roeske Fernandez*
        LARA ROESKE FERNANDEZ
        Florida Bar No. 0088500
        lfernandez@trenam.com
        LORI V. VAUGHAN
        Florida Bar No. 0154921
        Lvaughan@trenam.com
        TRENAM, KEMKER, SCHARF, BARKIN,
          FRYE, O'NEILL & MULLIS, P.A.
        Suite 2700, Bank of America Plaza
        101 East Kennedy Boulevard
        Tampa, Florida 33602
        Telephone: (813) 223-7474
        Fax: (813) 229-6553
        Attorneys for Lauren Greene, Chapter 7 Trustee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 30, 2010, a true and correct copy of the Notice of Filing, together with the Asset Purchase Agreement, was served by the Court's electronic noticing system (CM/ECF) to all parties registered to receive notices via CM/ECF.

/s/ *Lara Roeske Fernandez*
Attorney

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT, dated as of the 30 day of November, 2010 (the "Execution Date"), is entered into by and among Travel Leaders Group, LLC ("Buyer"), Lauren Greene, the duly appointed chapter 7 trustee of 1800Hotels4U, LLC and Happy Duck Limited ("Seller"), Seller and Buyer are referred to in this Agreement (as defined hereinafter) collectively as the "Parties."

WHEREAS, Seller is the duly appointed chapter 7 trustee of 1800Hotels4U, LLC ("1800 Hotels") and Happy Duck Limited ("Happy Duck");

WHEREAS, 1800 Hotels and Happy Duck were engaged in the online travel business where they purchased hotel rooms in bulk from various suppliers and wholesalers and then sold hotel rooms to consumers (end users of their websites and call centers) (the "Business");

WHEREAS, Happy Duck is an Irish company whose operations expanded considerably into the United States in the year 2008. Happy Duck operated the Business under the fictitious name "1800HOTELS" and through its wholly-owned subsidiary, 1800 Hotels;

WHEREAS, 1800 Hotels and Happy Duck own certain assets in connection with the operation of the Business;

WHEREAS, Buyer wishes to purchase from Seller and Seller desires to sell to Buyer the Acquired Assets and not the Excluded Assets (each as defined below);

WHEREAS, 1800Hotels and Happy Duck each filed separate voluntary petitions for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") initiating the cases In re 1800Hotels4U, LLC, Case No. 8:10-bk-16648-CED and In re Happy Duck Limited, Case No. 8:10-bk-16655-CED (collectively, the "Bankruptcy Cases");

WHEREAS, the Bankruptcy Cases subsequently converted to Chapter 7 and the Seller is the duly appointed chapter trustee of both 1800Hotels and Happy Duck (referred to herein as, the "Debtors");

WHEREAS, on November 10, 2010, the United States Bankruptcy Court, for the Middle District of Florida, Tampa Division (the "Bankruptcy Court") entered an order approving bidding procedures in connection with the sale of the Assets and authorizing the Seller to enter into an asset purchase agreement; and

NOW, THEREFORE, in consideration of the respective representations, warranties, covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## Purchase and Sale

2.1 <u>Agreements to Purchase and Sell</u>. Subject to the terms and conditions of this Agreement, and except for the Excluded Assets, at the Closing, Seller shall sell, transfer, convey, assign and deliver to Buyer, and Buyer shall purchase and accept from Seller, free and clear from any liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code, with all valid liens to attach to the proceeds of sale, all right, title and interest of Seller in and to all of the Assets used in the operation of the Business existing as of the date of this Agreement or acquired through the Closing, including without limitation, those assets more fully described below (collectively, the "<u>Acquired Assets</u> "):

(a) all tangible assets used in connection with the Business, including without limitation computer systems, software, disks, tapes, and software and IT infrastructure;

(b) all goodwill directly arising from, related to or resulting from the Business;

(c) all rights to intellectual property used in connection with the Business (whether registered or unregistered), including domain names (including without limitation, the domain names 1800Hotels.com and 1800Hotels.ie), copyrights, trademarks, patents, trade secrets, customer lists and customer data, all documentation relating thereto and all rights for the use of the domain names;

(d) all regulatory approvals; and

(e) all other assets directly arising out of, relating to or resulting from the Business, of every nature whatsoever, and wherever located, such as any business records; customer lists; customer records and histories; customer invoices; lists of suppliers and vendors and all records relating thereto; advertising matter; catalogues; and photographs.

2.2 <u>Excluded Assets</u>. Acquired Assets shall not include (collectively, the "<u>Excluded Assets</u>"):

(a) cash, bank or other deposit accounts, prepaid deposits, security deposits of the Debtors;

(b) rights to tax refunds, prepaid taxes or tax attributes of or related to the Debtors or their affiliates;

(c) any capital stock of the Debtors or their affiliates; and

(d) the office furniture and other personal property, equipment, causes of action located in Tampa, Florida and Ireland listed on the attached <u>Exhibit A</u>.

2.3 <u>No Assumption of Liabilities</u>. Buyer shall not assume any liabilities of Seller, Debtors or any of their affiliates. In furtherance and not in limitation of the foregoing, neither Buyer nor any of its affiliates shall assume, and shall not be deemed to have assumed, any debt, claim, obligation or other liability of Seller, Debtor or any of their affiliates whatsoever, including, but not limited to: (i) any environmental liabilities, (ii) any of liabilities in respect of taxes, (iii) any brokers' or finders' fees arising by reason of Seller's or Debtors' dealings with brokers or other third parties, or other liability of Seller or Debtors for costs and expenses (including legal fees and expenses) incurred in connection with the Bankruptcy Cases or this Agreement, (iv) any indebtedness, (v) any obligations or liabilities for Debtors employees, including severance, pension, profit sharing or any other employee benefit plans, compensation or retiree medical and other benefits and obligations, or (vi) rebates, allowances, deductions and/or price discrepancies relating in any manner to products or services sold in pursuit of the Business prior to the Closing Date.

2.4. <u>Right to Assume Certain Contracts</u>. Trustee agrees that, in the event Buyer determines that there are executory contracts useful or necessary to utilize the Acquired Assets after Closing, Trustee will, if requested by Buyer, file a motion with the Bankruptcy Court to assume and assign any such contracts following Closing provided that Buyer will be responsible to pay any cure costs associated with such contracts.

2.5. <u>Subsequent Sale of Domain Name</u>. Seller acknowledges that, immediately following the Closing, Buyer intends to sell and transfer to a third party all of Buyer's right, title and interest in and to the 1800Hotels.ie domain name acquired hereunder.

## Purchase Price

3.1 <u>Purchase Price</u>. In consideration of the sale by Seller to Buyer of the Acquired Assets, Buyer agrees to pay to Seller at Closing the sum of Two Hundred Twenty Thousand Dollars ($220,000.00) in cash or certified funds.

3.2     Deposit.  Buyer shall tender a deposit (the "Deposit") the sum of $20,000.00 in US Dollars with Seller's broker Equity Partners, Inc. (the "Broker") to be held in an escrow account and to be applied to the Purchase Price at the Closing. In the event the Closing does not occur for reasons other than the fault of the Buyer, Seller shall return the Deposit to Buyer as soon as practicable thereafter.

## Closing

4.1     Closing Date. On the terms and subject to the conditions of this Agreement, the Closing shall take place on Tuesday, November 30, 2010 (the "Closing").

4.2     Seller's Deliveries to Buyer at Closing. At the Closing, Seller shall make the following deliveries to Buyer:

(a)     A bill of sale, duly executed by Seller, in form and substance satisfactory to Buyer in its reasonable discretion pursuant to which Seller transfers to Buyer those Acquired Assets that constitute tangible property (the "Bill of Sale").

(b)     A counterpart assignment of intangible property, duly executed by Seller, in form and substance satisfactory to Buyer in its reasonable discretion pursuant to which Seller assigns to Buyer its interest, if any, in and to those Acquired Assets that constitute intangible property (the "Assignment of Intangible Property").

(c)     Any such other documents or other items reasonably contemplated by this Agreement to be delivered by Seller to Buyer at the Closing.

(d)     The certificate contemplated by Section 5.2 below.

4.3     Buyer's Deliveries to Seller at Closing. On the Closing Date, Buyer shall make or cause the following deliveries to Seller:

(a)     The Purchase Price.

(b)     A counterpart of the Assignment of Intangible Property, duly executed by Buyer.

(c)     Any such other documents or other items reasonably contemplated by this Agreement to be delivered by Buyer to Seller at the Closing.

4.4 <u>Further Assurances</u>. Seller, from time to time after the Closing, at the request of Buyer and without further consideration but at Buyer's sole expense, shall execute and deliver further instruments of transfer and assignment provided by Buyer at Buyer's expense as may be necessary to obtain any consents or approvals, or to effectuate any transfer contemplated by this Agreement. Seller further agrees that it will promptly notify Buyer of any objections or other bids with respect to the Acquired Assets.

## Representations and Warranties of Seller

5.1 <u>Authority to Sell</u>. Seller is the Chapter 7 Trustee of the Debtors. The Bankruptcy Court approved the initial bid procedures for the sale of the Assets. On November 30, 2010, the Bankruptcy Court approved the sale of the Acquired Assets to the Buyer. The Bankruptcy Court authorized the Seller to consummate the sale of the Acquired Assets.

5.2 <u>Proper Notice Given</u>. Seller has given proper and timely notice of the sale transaction contemplated by this Agreement to all parties entitled to notice under the applicable Rules of Bankruptcy Procedure, to the holders of all liens, whether filed or contingent, all equity holders and all other creditors who may be affected by the proposed sale. Debtor shall provide Buyer with a certificate as to Buyer's compliance with the requirements of this Section 5.2 at or prior to the date of Closing.

## Representations of Buyer

6.1 <u>Financial Status</u>. Buyer has adequate funds to complete the transactions contemplated herein without any financing contingency.

6.2 <u>No Conflict</u>. Neither the execution nor performance of this Agreement will violate any contract or other commitment to which Buyer is a party, or by which it is bound, or will be in conflict with, or result in or constitute a breach or default on the part of Buyer under any such indenture, contract or other commitment.

6.3 <u>Compliance with Laws</u>. All consents, approvals and authorizations and all other requirements prescribed by any law, rule or regulation which must be obtained or satisfied by Buyer and which are necessary for the execution and delivery by Buyer of this Agreement and the documents to be executed and delivered by Buyer in connection herewith have been obtained and satisfied or shall be obtained and satisfied.

6.4     As-Is; Where-Is.  Buyer acknowledges and agrees that all of the Acquired Assets are being purchased by Buyer in "As-Is" and "Where-Is" condition. Buyer acknowledges that Seller is selling all of her rights, title and interests as they may exist without representations or warranties. Buyer further acknowledges and agrees that Buyer is familiar with the Acquired Assets and unconditionally accepts the purchase of the Acquired Assets in such "As-Is" and "Where-Is" condition, pursuant to the terms herein.

6.5     Confidentiality.  It is acknowledged by Buyer that all information discovered in the course of its due diligence is in all respects of a confidential nature and Buyer agrees at Seller's request at any time to execute a nondisclosure agreement confirming these terms of confidentiality.

## Conditions to Closing

The obligation of Seller to sell the Acquired Assets pursuant to this Agreement shall be subject to the satisfaction of the following conditions ("Closing Conditions"):

7.1     Bankruptcy Court Approval.  By written order (the "Bankruptcy Court Order") the Bankruptcy Court shall approve this Agreement and the transactions contemplated herein pursuant to §363(b), (f) and (m) of the Bankruptcy Code. The Bankruptcy Court Order shall:

(i)     Specifically authorize the Seller and the Debtor to sell the Acquired Assets to the Buyer in accordance with this Agreement and Section 363(f) of the Bankruptcy Code, free and clear of all liens, claims and interests;

(ii)    Confirm that the Buyer is a good faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code; and

(iii)   Contain such other terms and conditions as Buyer shall reasonably require.

7.2     Delivery of Purchase Price.  Buyer shall deliver the Purchase Price in full to Seller at Closing.

7.3     Delivery of Closing Deliverables.  Each party shall have delivered to the other party those closing deliverables contemplated pursuant to Sections 4.2 and 4.3, respectively.

## Miscellaneous

8.1. <u>Survival</u>. Except as provided herein, all covenants, releases, warranties, and representations made by the parties to one another pursuant to this Agreement shall survive this Agreement and shall be and remain in full force and effect thereafter. This Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the parties hereto.

8.2. <u>Complete Agreement</u>. This Agreement is the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements, oral or written, between the parties hereto with respect thereto. No claim of waiver, modification, consent, or acquiescence with respect to any provision of this Agreement shall be made against any party, except on the basis of a written instrument executed by or on behalf of such party. The waiver of breach of this Agreement shall not constitute a waiver of any subsequent breach.

8.3. <u>Headings</u>. The headings of all paragraphs of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

8.4. <u>Time of the Essence</u>. To the extent that performance is to be governed by time, time shall be deemed to be of the essence.

8.5. <u>Governing Law</u>. This Agreement is to be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the laws of the State of Florida shall govern.

8.6. <u>Counterparts</u>. This Agreement may be executed and delivered in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. This Agreement may also be executed by facsimile followed by delivery of the original executed Agreement.

8.7. <u>Costs and Expenses; Attorneys' Fees</u>. Each party hereto shall bear all of their respective costs and expenses, including attorneys' fees, incurred in connection with the Bankruptcy Cases and the preparation, negotiation, and execution of this Agreement.

8.8. <u>Severability</u>. In the event any provision of this Agreement is determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of said provision and this Agreement shall nevertheless

remain fully valid and enforceable, unless the provision held invalid is a material provision of this Agreement.

    8.9. <u>Jurisdiction of Bankruptcy Court</u>. The Bankruptcy Court shall retain jurisdiction to resolve any and all disputes arising under or relating to this Agreement. Each of the parties hereby consents to such jurisdiction.

    8.10. <u>Third Parties</u>. Except as expressly stated herein, nothing contained in this Agreement shall in any way affect or limit any claims or rights against third parties and each party to this Agreement expressly reserves all of its rights and claims against all such third parties.

    IN WITNESS WHEREOF, the parties have executed this Agreement as of date first written above.

[Space intentionally left blank with signatures on following page]

"BUYER"

Travel Leaders Group, LLC
6442 City West Parkway
Minneapolis, MN 55344

By: _Robert Brill_ (signature)
Print Name: _Robert Brill_
Title: _SVP/GC_
Dated: November 30, 2010

"SELLER"

Lauren P. Greene, Chapter 7 Trustee
for 1800Hotels4U, LLC and
Happy Duck Limited

By: _(signature)_
Print Name: _L P Greene_
Title: _Trustee_
Dated: November 30, 2010

9

## Exhibit A

## Excluded Assets

6 pcs. framed art
18 chairs
Nortel phone system
2 ups surge protectors
Oval 6' conference table
Lanier copier super G3 color
2 refrigerators
2 microwaves
Coffeemaker
4 top table with chairs
2 Lanier LD252C copiers
Trash cans
Standard desk
2 lateral files
Nortel phone rack
8' drawing board
Break table
Conference phone center
Sofa
30+ chairs
Approximately 7 desks
Some drawing boards
Phones
Mini fridge
Cameras
Printer ink
Miscellaneous phone handsets
Large pile of cubicle office partitions
30 computers with slim line monitors

5092954v1