UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

1800HOTELS4U, LLC,  Case No. 8:10-bk-16648-CED
    d/b/a 1800Hotels.com,  Chapter 7

    Debtor.
_____/

**FINAL ORDER AUTHORIZING THE SALE OF
PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
AND ENCUMBRANCES SUBJECT TO HIGHER OR BETTER OFFERS**
(Doc. No. 172)

THIS CASE came on for hearing on November 30, 2010 at 2:30 p.m., upon Chapter 7 Trustee's Motion for Entry of an Order (A) Authorizing the Sale of Personal Property Free and Clear of Liens, Claims, and Encumbrances Subject to Higher or Better Offers; (B) Establishing and Approving Bidding Procedures; (C) Approving Notice of Sale; (D) Scheduling Auction; and (E) Scheduling Hearing to Approve Sale (the "Motion")[1] (Doc. No. 172), filed by the Lauren Greene, the duly appointed Chapter 7 Trustee of 1800Hotels4U, LLC ("1800 Hotels") and Happy Duck Limited ("Happy Duck") (the "Trustee"). Pursuant to the Motion, the Trustee seeks entry of a final order that provides, among other things for (i) approval of the asset purchase agreement as filed with the Court (the "Agreement") (Doc. No. 209) between Lauren Greene, the duly appointed Chapter 7 Trustee of and Travel Leaders Group, LLC, the successful bidder at the Auction (the "Purchaser"), (ii) authorization of the Sale of the Purchased Assets free

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

and clear of all liens, claims, encumbrances and other interests (collectively, the "Interests"), and (iii) granting such other related relief. It appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest, that adequate notice of the Motion and opportunity for objection having been given, with no objections or requests for hearing having been filed, that this Court entered the Bid Procedures Order on November 10, 2010 (Doc. No. 179), that this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Trustee in the Motion at a hearing before this Court on November 30, 2010 (the "Sale Hearing"), and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein, this Court hereby makes the following

**FINDINGS:**

**Jurisdiction, Final Order and Statutory Predicates**

A. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). This is a core proceeding pursuant to 28 U.S.C. § 157. Venue of these cases is proper under 28 U.S.C. §§ 1408 and 1409.

B. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

### Notice of the Sale, Auction and the Final Hearing

C. Actual written notice of the Sale Hearing, Auction, Motion, Sale, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested persons and entities entitled to receive such notice, including, but not limited to the following parties: (i) the Office of the United States Trustee; (ii) counsel for 1800 Hotels and Happy Duck (together, referred to as the "Debtors"); (iii) taxing authorities and other governmental agencies having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all persons known or reasonably believed to have asserted an Interest in or to any of the Purchased Assets; (vi) all Schedule G claimants of the Debtors; (vii) all persons known or reasonably believed to have expressed an interest in acquiring the Purchased Assets; and (viii) all persons required to have notice pursuant to Bankruptcy Rules 6004(a), 6004(c), 6006(c) and 9014.

D. The Trustee published the notice of the Sale, the time and place of the proposed Auction, and the time and place of the Sale Hearing in, inter alia, Travel Weekly and Internet Retailer, on November 15, 2010, for a period of two weeks.

E. The Notice of Auction and Sale Hearing provided all interested parties with timely and proper notice of the Auction, Sale, and Sale Hearing.

F. As evidenced by the proffers made in open court, proper, timely, adequate, and sufficient notice of the Motion, Auction, Sale, and Sale Hearing has been provided in

accordance with Sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Trustee also has complied with all obligations to provide notice of the Motion, Auction, Sale, and Sale Hearing required by the Bid Procedures Order. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Auction, Sale and Sale Hearing is required.

G. The disclosures made by the Trustee concerning the Agreement, Auction, Sale, and Sale Hearing were good, complete and adequate.

**Agreement**

H. In accordance with the Bid Procedures Order, the Purchaser was the Potential Purchaser and deemed eligible to participate at the Auction.

I. Purchaser is a bona fide third party purchaser, who is not an insider of the Debtors as defined pursuant to Section 101(31) of the Bankruptcy Code.

J. There being no other bidders, pursuant to the Agreement, the Purchaser made the initial bid of $220,000.00, which was a valid and proper offer pursuant to the Bid Procedures Order and Section 363(b) of the Bankruptcy Code.

K. Post-closing, Trustee acknowledges that Purchaser intends to sell and transfer to a third party its interest in and to the 1800Hotels.ie domain name. As a result of this third party transfer, the estates of the Debtors will receive $20,000.00 less commissions earned by Equity Partners.

**Good Faith of the Purchaser**

L. The Purchaser is purchasing the Purchased Assets in good faith and is a

4

good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia:* (i) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser complied with the provisions in the Bid Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (iv) all payments to be made by the Purchaser in connection with the Sale have been disclosed; (v) neither the Purchaser nor the Trustee have violated Section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Agreement was at arms' length and in good faith.

**Highest and Best Offer**

M.  There were not other bids for the Purchased Assets. The Trustee did not need to conduct the Auction. The Trustee has complied in all material respects with the Bid Procedures Order. The auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Auction was duly noticed and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Purchased Assets.

N.  The Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Trustee's determination that the

Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

O. The Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of the Chapter 7 cases. No other person, entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser.

P. Approval of the Motion, the Agreement, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors' estates, their creditors, and other parties in interest.

**No Fraudulent Transfer**

Q. The Purchase Price for the Purchased Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Florida Uniform Fraudulent Transfer Act, (ii) fair consideration under the Florida Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia ((i), (ii) and (iii) collectively referred to as the "Value"), for the Purchased Assets.

R. Except as expressly set forth in the Agreement, the Purchaser shall have no liability or obligations for any Interest, or other obligation of or against the Debtors, related to the Purchased Assets by reason of the transfer of the Purchased Assets to the Purchaser. The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to: (1) be a successor (or other

such similarly situated party) to the Debtors; or (2) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Agreement.

**Validity of Transfer**

S. The Trustee has full authority to execute and deliver the Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Trustee to consummate the transactions contemplated by the Agreement.

T. The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the Trustee to the Purchased Assets free and clear of all Interests accruing, arising or relating thereto any time prior to the Closing Date.

U. The Debtors are debtors eligible for relief pursuant to Title 11 of the Bankruptcy Code.

**Section 363(f) Is Satisfied**

V. The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser were not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of such Interests.

W. The Trustee may sell the Purchased Assets free and clear of all Interests against the Debtors, their estates or any of the Purchased Assets because, in each case,

7

one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests against the Debtors, their estates or any of the Purchased Assets who did not object to the Sale or the Motion are deemed to have consented thereto pursuant to Section 363(f)(2) of the Bankruptcy Code. Further, those holders of such Interests who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, in each instance against the Debtors, their estates or any of the Purchased Assets, attach to the proceeds of the Sale (net of taxes, fees and expenses incurred in effecting the Sale) ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

X. As used in this Order, the term "Interest" means and includes, in addition to the types of claims described below, all liens (as defined in Section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in Section 101(5) of the Bankruptcy Code), and encumbrances, including, but not limited to, (A) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights, (B) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the Closing Date, and (C) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens,

judgments, demands, encumbrances, causes of action, counterclaims, defenses, judgments, demands, defects, options, recoupment rights, rights of set off, rights of deduction, restrictions, limitations, charges, reclamation claims, rights of first refusal, right of first offer, or charges or interests of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (ii) all debts, liabilities and obligations arising or accruing in any way in connection with any agreements, acts, or failures to act of the Debtors, claims (as that term is defined in Section 101(5) the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under the doctrine of successor liability.

Y.  Except as otherwise provided in the Agreement, the transfer of the Purchased Assets to the Purchaser will not subject the Purchaser to any liability whatsoever with respect to the operation of the Business prior to the Closing Date, including, without limitation, any liability arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance arrangements, change in control agreements or other similar agreements to which Debtors are or were a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of

the Debtors, (iii) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other Environmental, Health and Safety Requirements, (vi) any bulk sales or similar law, (vii) any litigation by or against the Debtors, and (viii) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability. For the avoidance of doubt, the liabilities set forth in this paragraph are included in the defined "Interests" for all purposes herein.

Z. Blacknight Internet Solutions Limited ("Blacknight") claims an Interest in a portion of the Purchased Assets. Blacknight has agreed to release any Interest in the Purchased Assets, including release of the domain names to the Trustee in exchange for

payment of $7,000.00 by the Trustee and upon entry of this Sale Order. On October 29, 2010, the Trustee paid Blacknight.

AA. Communicraft Limited ("Communicraft") claims an Interest in certain software pursuant to a licensing agreement and asserts that it is the owner of a certain portion of the component parts of the software that created the software programs used with the domain names. Communicraft has agreed to release any Interest in the Purchased Assets in exchange for payment of $20,000.00 and a percentage of the Sale Proceeds, as more fully described in the Motion. Pursuant to the Motion, the Trustee requested approval of the Communicraft agreement.

**Compelling Circumstances for an Immediate Sale**

BB. To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Motion and Agreement. Time is of the essence in consummating the Sale. The Sale must be approved and consummated promptly in order to preserve the value of the Purchased Assets.

CC. Given all of the circumstances of the Chapter 7 Cases, the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

DD. The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without

limitation, Sections 105 and 363, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**Accordingly, it is**

**ORDERED:**

**General Provisions**

1. The relief requested in the Motion is granted. The Sale contemplated thereby and the Agreement is approved as set forth in this Sale Order.

2. Any and all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing are hereby overruled on the merits.

**Approval of the Agreement**

3. The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are approved.

4. The consideration provided by Purchaser for the Purchased Assets under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute Value under the Bankruptcy Code or any other applicable law, and the Sale may not be avoided, or costs or damages imposes or awarded, under Section 363(n), or any other provision of the Bankruptcy Code.

5. Pursuant to Section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Sale as

contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement and close fully the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Agreement and such other ancillary documents.

6. Any Interest of Blacknight in the Purchased Assets is satisfied and Blacknight is directed to release the domain names to the Trustee or her assignees, including the Purchaser.

7. Any Interest of Communicraft in the Purchased Assets is satisfied.

8. The Trustee is authorized and directed to pay from the Sale Proceeds the following disbursements:

    a. $5,680.00 representing expenses to EP USA, Inc. ("Equity Partners");

    b. $19,200.00 representing the percentage fee to Equity Partners; and

    c. $20,000.00 representing payment to Communicraft pursuant to the agreement set forth in the Motion and approved by this Court in this Sale Order;

    d. $66.00 representing out of pocket transfer fees

The net Sale Proceeds shall be held by the Trustee pending further order of this Court.

9. This Sale Order shall be binding in all respects upon the Trustee, the Debtors' estates, all creditors, all holders of equity interests in the Debtors, all holders of

any Claim(s) (whether known or unknown) against the Debtors, any holders of Interests against or on all or any portion of the Purchased Assets, all Schedule G claimants of the Debtors, and the Purchaser and all successors and assigns of the Purchaser. This Sale Order and the Agreement shall inure to the benefit of the Trustee, the Debtors, their estates and creditors, the Purchaser and their respective successors and assigns. The Trustee's failure to comply with any requirement of this Sale Order will not impair the Purchaser's title to the Purchased Assets or the validity of any transfer to the Purchaser.

**Transfer of the Purchased Assets**

10. Pursuant to Sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser "as is where is" with no representations and warranties in accordance with the Agreement upon and as of the Closing Date. Such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Trustee's receipt of the Purchase Price, shall be free and clear of all Interests. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets. Pursuant to Section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets shall be free and clear of (a) any and all Interests; and (b) any and all Claims including, without limitation, any and all claims pursuant to any successor or successor-in-interest liability theory. All Interests shall attach solely to the proceeds of the Sale (net of taxes, fees and expenses incurred in effecting the Sale) with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their

estates may possess with respect thereto.

11. Except as expressly permitted or otherwise specifically provided by the Agreement or this Sale Order, all persons and entities holding Interests in or against all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such persons' or entities' Interests in and to the Purchased Assets. On the Closing Date, the Purchaser shall be authorized to execute, on behalf of each creditor, such documents and take all other actions as may be necessary to release Interests on the Purchased Assets, if any, as provided for herein, as such Interests may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of Debtors' lack of good standing in any jurisdiction in which Debtors are formed or authorized to transact business. Upon consummation of the transactions set forth in the Agreement, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Sale Order under Section 363 and the related provisions of the Bankruptcy Code.

12. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors

15

to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Agreement and this Sale Order.

13. This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

**Other Provisions**

14. Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Interest arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Purchased Assets, or the use of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i)

commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Interest against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

15. Except as otherwise expressly set forth in this Sale Order or the Agreement, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, the Purchaser and its employees, officers, directors, advisors, lenders, affiliates, owners, successors and assigns shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and the Purchaser and its employees, officers, directors, advisors, lenders, affiliates, owners, successors and assigns shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or

substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the Agreement for the benefit of the holders of any Interest. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests against or interests in the Debtors or any of the Purchased Assets.

16. The transactions contemplated by the Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Purchaser is a good faith Purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to, and granted, the full protections of Section 363(m) of the Bankruptcy Code.

17. Purchaser is hereby authorized in connection with consummation of the Agreement to allocate the Purchased Assets among its affiliates, designees, assignees,

and/or successors in a manner as it in its discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Agreement, and the Trustee shall cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.

18. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Trustee and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order. All stay provisions of Bankruptcy Rules 6004 and 6006 are expressly waived without further notice.

19. In accordance with the Agreement, on or prior to the Closing Date, the Purchaser and the Trustee shall take all actions required therein. The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

20. The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

21. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement,

all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is a party or which has been assigned by the Trustee to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

22. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23. The provisions of this Sale Order are mutual and non-severable.

24. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in this Chapter 7 Case, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

DONE and ORDERED in Chambers Tampa, Florida on this _November 30, 2010_

_____
CARYL E. DELANO
United States Bankruptcy Judge

Copies furnished to: All Creditor Matrix

5047450v2